Good morning. Welcome to the Fourth Circuit. We are Judge Floyd to my right, Judge Harris to my left, and I will prepare to hear four cases. We're going to start with the VeriSign case today. Good morning, and may it please the Court. My name is Derek Newman. I represent XYZ.COM, and I'd like to discuss three points. First, that the Court below applied the wrong burden of proof, the wrong legal standard for what qualifies as an exceptional case, and ignored circumstantial evidence of VeriSign's intent to harass XYZ and deter competition. I'll start with my first point. The trial court applied a clear and convincing evidence standard, even though the Supreme Court in Octane Fitness v. Icon Health held that an exceptional case under the Patent Act requires a preponderance of the evidence standard. This Court in Georgia Pacific v. Von Daryl held that the Octane Fitness standard applies equally to the Lanham Act because the exceptional case provision in both the Patent Act and the Lanham Act is identical. The Court below also applied the wrong standard for what is an exceptional case. The Court provided that the standard is a case that is malicious, fraudulent, willful, or deliberate, but in Octane Fitness, the United States Supreme Court held that an exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position, considering both the facts and governing law, that courts should determine an exceptional case on a case-by-case exercise of their discretion, that no precise rule or formula applies. It's all about equitable considerations. Octane Fitness also held that bad faith is not a requirement to show an exceptional case. But when the District Court provided the standard as malicious, fraudulent, willful, or deliberate, that's essentially a bad faith standard, and disregards- I agree with you that in the introduction, there's that language that sounds like bad faith. Not exactly, Your Honor. The Court applied the factors under the lens of a clear and convincing evidence standard. I understand that argument, but in terms of the substance of the legal standard the District Court applied, what do you think the District Court got wrong, apart from that reference to bad faith at the beginning? The Court applied three Georgia-Pacific factors, as the Court should. But those factors, this Court should clarify, are non-exclusive. And the reason is because in Octane Fitness, the Supreme Court expressly said that there is a non-exclusive list of factors. That it's a totality of the circumstances, and there is no precise rule or formula. Georgia-Pacific, if you were to follow those three factors, which should apply, but if you were to follow them strictly, that would be a precise rule or formula, and this Court should clarify that Octane Fitness doesn't require that, and so the Court should consider more. May I ask you just one particular question about the legal standard? Under the first prong of Octane Fitness, when you're talking about the relative merits or the discrepancy in the merits between the parties' substantive positions, do you think that a case can qualify as exceptional even if the party's position is not quite frivolous or objectively unreasonable, or do you think it has to be either frivolous or objectively unreasonable? Your Honor, the case need not be frivolous or objectively unreasonable. If it is, that would be an exceptional case, and so the Georgia-Pacific Court was correct in noting that as a factor. But the United States Supreme Court in Octane Fitness held that an objectively baseless case, which is the same thing as an objectively unreasonable case, is not required, which indicates that a meritless case, such as Verisign's case below, even if it's not objectively unreasonable, could still qualify as an exceptional case under the totality of the circumstances. The court below also ignored circumstantial evidence of Verisign's intent to harass XYZ and deter competition, and I can give several examples of that. This case was a false advertising case where there were allegations that XYZ made false statements about Verisign, but yet a lot of the discovery that Verisign did had nothing to do with false statements or XYZ or Verisign. For example, Verisign served a subpoena on Donuts, which competes against both XYZ and Verisign, seeking Donuts' confidential information. Donuts' confidential information could not bear on whether XYZ made a false statement about Verisign. Similarly, Verisign served a subpoena on the industry regulator ICANN, seeking confidential agreements between ICANN and other competitors in the industry. None of that could bear on whether XYZ made a false statement about Verisign. Let's stick with this case, Octane Fix, that you brought up. We find it applicable, and what if we agree with you, okay, the district court applied the incorrect evidentiary standard and the district court applied the incorrect legal standard. Is remand necessary if we also recognize that the district court made a clear finding that the evidence was speculative? Do you lose in terms of taking it back? I mean, why would we set it back if the evidence is simply speculative in any event? Your Honor, this court should remand for two reasons. First, I'll start with the standard. The standard comes from this court's decision in Humphrey v. Humphrey, which provided that when burden of proof is at issue here, preponderance of the evidence should have applied, that there is a strong presumption in favor of remand with one narrow exception. That narrow exception is if there could only be a single determination of facts on the record, and that single determination of facts must be inevitable. Here, there are a number of facts that if the court weighs under the proper lens, preponderance of the evidence, not clear and convincing evidence, the court can come out another way. And Your Honor notes that the court wrote off X, Y, Z's position as speculation. Speculation arises when there is no evidence. And what I was listing a moment ago is certain points of evidence that the court didn't mention and we can assume disregarded that leads to the reasonable inference that Beresign intended to harass X, Y, Z and deter competition. Speculation, no evidence. What I'm listing are facts, actual evidence the court should consider. For example, Beresign served a subpoena on the accountant for the CEO of X, Y, Z. Beresign sought X, Y, Z CEO's personal income tax returns. The CEO's personal income tax returns doesn't bear one way or another on whether X, Y, Z made a false statement about Beresign. But to get those tax returns is a great way to harass X, Y, Z and deter other competition. That's not speculation. That's a fact from which a reasonable inference can be drawn. The court also didn't consider the relative size of the parties. Beresign is a multi-billion dollar company with unlimited resources. X, Y, Z was almost destroyed by this litigation. And in going into litigation like this, Beresign probably knew that it could destroy X, Y, Z through litigation, a reasonable inference can be drawn. The court didn't consider the timing of the litigation. This case was filed right after X, Y, Z emerged as a viable competitor to Beresign. And that taken into consideration with the other evidence, a reasonable inference can be drawn that Beresign intended to harass X, Y, Z and deter competition. So at the end of the day, what you really just want us to do is to remand this case to the district court to apply what you say should be the correct legal standard and evidentiary standard on octane fitness. Yes, Your Honor. And in addition, we believe that this court should provide guidance to the trial court and to other district courts across the circuit. How so? You just go back and tell them to read octane fitness? What guidance we need to tell them? Courts have struggled in applying octane fitness and reconciling it with Georgia-Pacific. Yesterday, we filed a supplemental authority list of cases that had inconsistent factual, excuse me, inconsistent legal conclusions, seemed to struggle with reconciling Georgia-Pacific and octane fitness. This court should expressly hold that the burden of proof on an exceptional case is preponderance of the evidence, that bad faith is not required. Those are two things you say octane fitness requires. Yes, Your Honor. You just say we just should say what already has been said. Your Honor, it seems odd, but when looking at how courts are applying Georgia-Pacific, district courts seem confused because octane fitness says that expressly, but there is some reason that district courts don't recognize that, and we hope this court provides guidance and says it expressly. Also, that the factors in Georgia-Pacific, which are correct, are non-exclusive because, of course, no precise rule or formula applies. The factors are meant to be non-exclusive. This court should provide additional guidance as to other factors to consider, such as the relative size of the parties, the timing of the litigation, and when looking at the damages, in this case, Verisign never had any damages, look at the amount of damages, how much is the case worth in proportion to how the case was litigated, and here when you look at no damages or even if it was just a million dollars in damages, that doesn't warrant 17 third party subpoenas to parties that are unrelated to any false claim, 25 depositions, 8 expert reports, and it doesn't require the case to cause XYZ to spend $2 million to make true statements. I'll reserve my remaining time for rebuttal. Thank you. Thank you. We'll hear from the other side. Good morning, Your Honors, and may it please the Court, my name is Randy Miller, and I represent Verisign. I just want to start briefly with five points that I think there's no disagreement, so these are five points that I think both parties agree. Both parties agree that we're here- Let's start where we left off there. Yes, sir. Let's talk about obtaining fitness and what the trial court did here. Did the trial court apply the wrong evidentiary standard and the wrong legal standard in light of the language of octane fitness? The court followed octane fitness in the four circuits, Georgia-Pacific. There's three factors. There is- I want to talk about octane fitness. There is a statement in octane- Did the court follow the standard of review, and was it clear and convincing, or is it preponderance? Octane fitness said preponderance. Did the court follow that? The district court said clear and convincing, Your Honor. Wasn't that error? It's harmless error. Answer my question. It is error. I will let you talk prejudice after, but it was error. I believe so. Although- What about the evidentiary standard in terms of whether it's malicious in that language? Is that in octane fitness? I don't believe that that was an error, Your Honor. That was simply, as Judge Harris said, a quote that was in the opinion. Those are things that illustrate whenever there's an egregious or exceptional case. Both parties agree that exceptional case is rare, and so that's a perfectly legitimate quote. If you engage in activity that's, for example, willful or fraudulent or malicious, that that would be the kind of circumstance that courts applying octane fitness in Georgia-Pacific ought to consider. So, it was not error for Judge- Can I follow up on that? Because my concern is that it's true. It's the sentence in the introduction. You don't know how much it means, but then in analyzing the Georgia-Pacific factors, the court is only talking about motive. It doesn't do sort of an analysis. Let me look at the relative merits of the two positions and weigh the discrepancy between the merits. It just says, is there clear and convincing evidence of bad faith? And it just keeps coming back to motive. The thing the court says at the end about the evidence is speculative, that's as to the party's motive. So, it sure seems as though this court thinks bad faith is a requirement. That's all it's looking for. I think the reason you saw the emphasis that you're describing, Judge Harris, is because the XYZ emphasized Verisign must have had an improper motive. I don't think so. I looked at the papers. I mean, they did a lot on, they tried to argue, look, the district court found against them under all five factors and, you know, their position was meritless and the district court just doesn't really address that. But XYZ had an opportunity to present that to the district court. As you note, it's in the papers. Judge Hilton considered those arguments and made findings. One of his findings was speculation. One of his findings was that Verisign acted reasonably. Those are to be reviewed on an abuse of discretion standard. And so, those findings would lead to the same result whether one applied a preponderance standard or a clear and convincing standard. And if I may address, because, Judge Harris, you mentioned the merits of the case, I would say that Verisign had an incredibly strong and well-supported case on the merits. We lost the case on summary judgment and this court affirmed it. But the principle that we were litigating was whether or not you could make statements in advertising that hyped your sales performance based on a free giveaway. That was what our case was at its core about. We had case law coming into the case that said, under Advertising Law 101, you can't hype sales performance based on a free giveaway. Then, we undertook discovery. Discovery was hard fought. But Verisign went undefeated in discovery motions. There's been some suggestion. There was a comment today about Donuts and ICANN. We won both of those motions. So, if you look at the record, Verisign faced extraordinary resistance. But what we were after in discovery when we sent subpoenas was that we were trying to show that XYZ was going into the market to line up with other companies like Network Solutions to engage in a promotional effort to do a free giveaway of the XYZ domain names. This is very helpful to go back to the language. But what we're here is an attorney's fees case and what we are dealing with is all the things you say are reasonable. We're not going to be your trial court here today. We want the trial court to consider everything you just said under the correct legal standard. You've already said it's error in terms of legal standard here. It's not clear and convincing evidence. It's preponderance of evidence. You say it's harmless error. It may be. But that's a whole different argument in terms of whether it's harmless error and then if the district court, in fact, did look at it from a bad faith perspective, which it appears as though that's what he's looking at is motive, Judge Harris has indicated here. It just seems reasonable and what we do as an appellate court is we don't go back through this evidence and weigh through it. I mean, even though he said it's speculative, he's doing it with a lens of seeing under the wrong legal standard and the wrong evidential standard if it's bad faith. So at that point in time, we don't like to muddle these things up. We just send it back. I mean, everybody goes back and says, redo this thing right and then bring it back to us in a nice, clean way. We like to kind of do stuff in a clean way up here and I get your point. I mean, we can listen to you, go back through the evidence, but that's not helpful, at least from my perspective, when we have a district court that clearly erred, at least in terms of applying the standards here. And now you've given us the evidence and there are cases we've gone and said, okay, yeah, this is so overwhelming, we're going to say if you'd done it, even if you'd done it, it would have gone the other way. But that's really the question here is do we do the district court's job here or do we just simply send it back? Shouldn't take a lot, clean it up, and I'm pretty sure it'll show back up here one way or the other unless you guys decide to save us that trouble. Well, Your Honor, I apologize if I suggest that you should do the district court's job. I don't mean to suggest that. I didn't mean, I don't mean to even indicate you're suggesting it. I'm just letting you know we won't do that. Yes, sir. When you're giving evidence of it, what's really compelling here is that when you start out and says a district court erred, standard is so important. I mean, that's really how you detail how to weigh the evidence, how to look at it, and when you apply that wrong standard, oh, it just puts it in a whole different posture. And then to throw in the fact that he focused on motive, which is bad faith, which our team fitness says no, that's not what you do, it really puts us in a position of, well, what do we do with this case now? Well, so, Your Honor, to that, I would say a couple of things. There is a case, a Fourth Circuit case called Humphreys, which XYZ relies on very strongly. That's a case about the harmless error doctrine. And what that case actually says is that if it's inevitable that on remand the same result will occur, then there's no reason to remand and this court can simply affirm. And so, I think what I would say to Your Honor's comments is that yes, clear and convincing is a different standard than preponderance. But if this court were to conclude that if on remand it's inevitable that the court would reach the same result, that there should be no extraordinary fee shifting under the Lanham Act, under a preponderance standard, then this court has the ability to affirm on the case site and the harmless error doctrine. Can I ask you a question? Is there any sort of particular or unusual prejudice to you if we send this back to the district court? And I totally understand that I don't want to discount. It's more time. It's more money. More litigation is always, you don't do it unnecessarily. I take that to be your point. It's not necessary here. But is there anything that I might not be aware of that would make it particularly burdensome to send this case back now? It's just what you said, Judge Harris. It's just the fact that we would go back down. It sounds like we would have an evidentiary hearing on all the same issues. And you noted that the papers that were filed below made a lot of points. So we would have to restate that, or I would say regurgitate that to the district court. The district court would then look at it and say, and reach another decision, then we'd be back up here. Now, we were here before this panel before. And so the court does have some familiarity with the case. I understand the court affirms summary judgment. So we ruled against us. But I think the court has some familiarity with the case and would be able to determine, for example, whether the case was frivolous. Judge Hilton in the district court below did go through the three Georgia-Pacific factors. Now, I understand that he wrote an opinion that made emphasis on motive and made emphasis on things that sound like bad faith, although the phrase bad faith, by the way, doesn't appear in the opinion. But it sounds like he was focused on certain factors. And it also sounds like he did apply a clear and convincing, not a preponderant standard, which seems to conflict with octane fitness. But he did go through the three factors. Was the case frivolous on the merits? Second, did Verisign behave reasonably in litigation? And third, is there some other special reason for compensation and deterrence? Just a quick question about the second one that hasn't come up yet. If I'm remembering right, the district court said it wasn't unreasonable litigation conduct because there was nothing egregious like filing a false declaration. Is that the right standard after octane fitness? Octane fitness goes out of its way to say we're not looking for something at the level that would be independently sanctionable, like filing a false declaration. Right. So he did use the word egregious. And filing a false declaration. And he did give the example of filing the false declaration, which is some example that's given throughout the case. So there's this body of case law. And I know octane fitness in Georgia-Pacific came along and provided further clarity. But it's not as if… Not just that. They rejected that. They said it is incorrect to think that it should be something that's independently sanctionable. It does not have to be rised to the level of independently sanctionable. Otherwise, the sanction laws would be superfluous, is the ruling. But the fact that you're quoting sort of what everybody else sort of quotes when they recite the law in this doesn't mean that that's the only thing that would qualify. It's not like the district court. There's no evidence, I don't think, that the district court thought that the only thing that was necessary was sanctionable conduct. But Your Honor is asking about prong two of the Georgia-Pacific, which is whether or not Beresine litigated reasonably. And on this record, there is simply no evidence of that. If, for example, there's a suggestion that we were going out in discovery, taking a lot of aggressive positions in discovery. If we were taking aggressive positions in discovery, there's a very simple method to remedy that, which is you go in for a motion for protective order and you say the other party is being overly aggressive or increasing the cost unnecessarily. Such a motion was never filed because such a motion would have been defeated in light of the fact that Beresine continued to win, win after win after win in every discovery fight. And what was happening is that XYZ was completely shutting us down. Judge Nachmanoff, the magistrate judge, said that Mr. Negari, who's the named defendant, was behaving like a truculent child. He ordered him to fly to Virginia for a second deposition because he was, quote, appalled, end quote, by the level of obstruction and invasion that Mr. Negari was presenting. So I agree. We can continue this. And as I've indicated, we do have the Georgia-Pacific factors. But as you are informed by the standards set forth in Octane Fitness and by the nature of the evidentiary standard of whether it's bad faith, everything you're saying sounds wonderful. But we're not the trial court. Right. Well, I was not going to relitigate those facts up here. I understand. This is a court of law. And we're going to determine whether or not the law was correctly filed. Humphrey is one of those outlier cases. You know we don't do that. You know, most of the time, we do not take a case that we find error and then go out of our way to say, well, notwithstanding the court would have found this. When it's just simple, we're dealing with sophisticated companies. This is not overburdensome to go back and just say, do it right. There's a 28-J letter filed with a bunch of cases all over the place showing maybe the district courts are somewhat confused by that. I don't know if we can be helpful in saying do what the Supreme Court says to do. Read Georgia. Not, but it just seems to me, you know, that's kind of where this case is. Well, I take your point from earlier, Your Honor, that, you know, the guidance that you would provide would say read Octane Fitness and read Georgia-Pacific and apply that. And don't say that it's— At least how you read Octane Fitness. Octane Fitness is the Supreme Court. Yeah, that's the court's case. You ought to read. And it doesn't have to be independently sanctionable. And it doesn't have to be—you don't have to have—look for specific things. It just has to stand out of the ordinary. And I think that you could repeat that or you could refer the district courts in the circuit to that. In a decision, whether you affirmed or sent it back down, you could articulate, hey, listen, we need to make sure to be mindful that there is a modification to the standard in light of Octane Fitness. And you could say that whether or not you remand or affirm. I'm suggesting you affirm because—in part because of what Judge Harris said that, you know, the burden and expense of having to go back down and then come back up here again. I guarantee we'd have to come back up here again. But, you know, I kept talking about the Humphreys case, which is their case. We have the Schwartz v. Rent-a-Rec case, which is also another harmless error case. It actually comes up in the context of Lanham Act attorney fee shifting. It says you can affirm if the result is going to be the same. But let me—in my closing minutes, I just wanted to flag a sort of a broader issue, which is, look, it is exceptional case. And both sides have agreed that that means rare. And that's what the case law—concurrent case law says. I'm someone who has litigated these Lanham Act false advertising cases for 20 years. I litigated a case that we cite in the papers, the Sanderson Farms v. Tyson's case out of the District of Maryland. And there is something to be said for respecting Congress' remedial purpose and the importance of allowing companies, when they see false or misleading statements used in promotional materials in commerce, to go police that. In 2014, there were two very important Supreme Court cases, Palm and Lexmark, which were unanimous Supreme Court decisions that talked about the importance of Congress' remedial purpose in allowing competitors to police the market in this way. And if there is a sort of overreaction to this and we send too restrictive of guidance to the district courts, it invariably will have a chilling effect on companies willing to bring these kind of cases. Now, I mentioned the Tyson food case. That was a case where we brought that in the District of Maryland. We challenged Tyson's advertising slogan, raised without antibiotics. It had to do with chickens and Tyson was saying that they raised their chickens without antibiotics. The USDA, which is a federal agency responsible for the poultry industry, approved that claim. So we had to make a decision as whether we are going to go to court under the Lanham Act and say, nevertheless, notwithstanding the fact that USDA approved the claim, it was false or misleading, which was a difficult decision. We did, though, make the decision. We won. It was false. The chicken was, in fact, jacked up with all kinds of antibiotics, in fact, after we went through all the scientific evidence. And the court issued a nationwide injunction pulling that advertising campaign down. Now, our clients, Sanderson and Purdue, benefited because we sort of ameliorated our competitive harm. But there was something else having nothing to do with our clients, which is the consumers. The consumers benefited because there wasn't this kind of false statement out there. And we had to bring this case in the face of agency action to the contrary. Now, later in the Palm case, the Supreme Court clarified the agencies are sort of on the same plane as Lanham Act. Lanham Act is really important. All of this is by way of saying the remedial purpose of going after this kind of false advertising is something that the court should take into account. Because if we have to start telling our clients, look, you better be careful. We better make sure that we don't lose. Because if we lose, now we're going to have to litigate exceptional case, attorney fee shifting. And that's become like this very liberal standard that will chill enforcement of false advertising in this circuit and throughout the country. Well, if we choose to do that, we'll do our best to just say what the Supreme Court says and leave it right there. How's that? Yes, Your Honor. That'd be good, wouldn't it? We wouldn't be chilling anybody. We'd just say what the Supreme Court say. Read the Supreme Court. Yes, Your Honor. Your Honor, if there are no other questions. Thank you. Thank you very much. Mr. Newman, do you have anything you want to add here? Your Honor, I do think it would be helpful for this court to say to district courts what Octane Fitness said to clarify that the Georgia-Pacific factors are non-exclusive and that courts should consider other factors to confirm that no court has ever found that you look at the prevailing party's conduct when evaluating these matters, that a case could move from being reasonable to exceptional over time. And if the court has no further questions, I yield my remaining time to the bench. Well, you both have been very helpful to us. We'll let you know how we turn out on this. The court will come down and greet counsel and proceed with the next case.
judges: James A Wynn, Jr., Henry F. Floyd, Pamela A. Harris